By the Court.—Barbour, C. J.
The claim of the plaintiff in this action is founded upon the theory set forth in his complaint; first, that the defendants, with the intent and for the purpose of defrauding the plaintiff and others, caused the certificate of incorporation of the Central Mining Company of Colorado to be filed in the office of the Secretary of State, and in the office of the Clerk of Hew York ; and, secondly, that the defendants, for the purpose of inducing the plaintiff to subscribe for the stock of that company and pay them therefor, falsely and fraudulently issued and published a pamphlet containing certain false and deceptive statements and letters relating to the property and condition *154 of the company, and that the plaintiff was induced thereby to, and did, subscribe for and purchase five hundred shares of the stock of the company, and to pay therefor the sum of $5,000, although such stock proved to be, and was in fact, utterly worthless.
It is sufficient to say, in regard to the first mentioned allegation, that no evidence was given or offered upon the trial which tended to prove that the statements embraced in the certificate, or any of them, were untrue, or that the same or any portion thereof was calculated to or did deceive the plaintiff.
The second charge required the plaintiff to prove : first, that the defendants, or some or one of them, caused the pamphlet to be issued and published ; secondly, that the same contained false or deceptive statements which were calculated to mislead or deceive the plaintiff; and thirdly, that the plaintiff was, in fact, deceived and misled by the said statements, and was thereby induced to, and did, subscribe for and purchase the stock for a price greater than its real value.
The plaintiff wholly failed to prove any act on the part of the defendants Travers, Skiddy, or Jerome tending to show that they had anything to do with the preparation or publication of the pamphlet, and for that reason alone the complaint might well have been dismissed as to them. The evidence, however, is sufficient to show that the pamphlet was got up by the defendants McVicker, Ashmore, and Gaylord.
It is difficult to see how the statement contained in the pamphlet, to the effect that the company then had a working capital of $25,000 in cash and an equal amount in stock, could have been true, unless the trustees had sold or leased or mortgaged a portion of its lands, or granted mining rights, and thereby realized the amount of such money and stock; for when the certificate was made, it may be assumed from the evidence, the company had no property whatever except the lands which *155 it had purchased from Gaylord, and for which it had issued to him every dollar of its stock. But it was incumbent upon the plaintiff to prove that such statement was false and fraudulent, and that he failed to do. It was not the duty "of the defendants to establish the truth of the statement until there was some evidence in the case tending to prove the contrary. The presumption is in favor of innocence, and the burden of proving a fraud is therefore cast upon him who alleges it. It follows that the falsity of that statement in the pamphlet was not established upon the trial.
The statement in the pamphlet .that a portion of the mining lands of the company consisted of 1,400 feet on the celebrated “Bates Lode” might, however, if submitted to the jury upon the evidence, have properly been considered by them technically untrue in fact, and calculated to deceive parties desiring to purchase the stock of the company. For the testimony shows that the 1,400 feet in question were not upon the Bates Lode proper, but upon what is known as the extension of the Bates Lode, being, as was stated by one of the witnesses, a probable continuation of that lode or vein. It is important to inquire here, therefore, whether the plaintiff was in fact 'deceived by that statement in the pamphlet, and was induced thereby to make the purchase of the stocks.
The circumstances under which the purchase was made were testified to by the plaintiff himself, and by him alone. He stated that he had an account and a deposite with Fearing & Balton; that on the 23d of January, 1868, Dalton wrote him a personal note calling his attention to the stock and recommending it, and for that reason he went to their office to purchase ; that one of the prospectuses or phamphlets was there handed to him and he looked at it. “I told Mr. Dalton,” the witness stated, “ I know nothing at all about it,—says he, " It is all right,' and upon that I gave him a check *156 for $5,000.” When. I went there it was Dalton who said It is all right; ’ Mr. Fearing assured me the same thing.” All that transpired was that Dalton and Fearing said,'when I went in there, that it was all right, and I gane my checlc I cannot tell how long I was at the office of Fearing & Dalton on the morning in question. I suppose I proceeded to purchase the stock almost immediately ; aboutfine or twenty minutes was the operation. Mr. Dalton said to me' It is all right,’ and I gane my checlc. I was handed that prospectus to read, and my attention was drawn to this map that hung on the wall. I read the prospectus. I ran my eye oner it, and afterwards took it home with me and read it oner afterwards. I loolced through it casually before I paid. "Mr. Dalton and Mr. Fearing both drew my attention to the map previous to the certificate being made out. I looked at it two or three times before and after. I cannot tell whether I loolced at the map before I completed the purchase of the stoclc, it is so long ago. I read the prospectus before I bought the stock. I did not read every word through. I looked more particularly to the property and the names that were in the company. I thoaght that was sufficient guaranty for its being worth something. I did not think the men whose names I saw could be connected with fraud.” '
This testimony of the plaintiff is not sufficient to show that he was influenced to any extent by the map in determining that he would buy the stock, for he does not remember that he looked at it before completing his purchase. Nor was his evidence touching the transaction, taken as a whole and considered with the surrounding circumstances, sufficient to authorize a finding by the jury that he was induced to make the purchase by the contents of the pamphlet, or, more particularly, by the statement therein contained that a portion of the company’s property consisted of 1,400 feet upon the Bates Lode.
*157 ' Considering these statements of the plaintiff in this connection it seems almost impossible to arrive at any other conclusion than that the purchase was made by him upon the representation of Fearing & Dalton that it was “ all right; ” or, if it may be assumed from the testimony that he even cursorily examined the pamphlet so far as to see the names of the trustees before he determined to buy the stock, he may have been induced to some extent by that fact to arrive at such determination. But he does not pretend that in the five or twenty minutes during which he was there he read all of the book, and it is difficult to see how he could have done so, as it contains fifty folios. Not does he say that in his cursory examination of the pamphlet while in the office of Fearing & Dalton he saw the statement touching the Bates Lode, nor even that he had ever heard of, or then knew, anything whatever in regard to that lode or its value. It cannot properly be inferred from the testimony of the plaintiff, therefore, that he was induced by any statement of the pamphlet to buy the stock.
It is sufficient to say, however, that the plaintiff was bound to prove upon the trial tjiat he was induced by the pamphlet, or by some statement contained therein, to make the purchase; for that was the gravamen of his action against these defendants. He was upon the stand himself as a witness, and could easily have testified to that fact if it existed, and stated the manner in which it was done, and he wholly failed to do so. The legal presumption therefore was that the.fact did not exist; and it follows that the complaint was properly dismissed, and the defendants should have judgment accordingly.
Monelr and Tan Tobst, JJ., concurred.